and mistaken construction of the law afford him no excuse, and the goods are subject to forfeiture.

If, therefore, in conclusion, gentlemen, you believe from the evidence that this sugar, after it reached the purchaser's hands, was mixed with charcoal for the purpose of reducing its grade and making it appear to be below No. 12 Dutch standard in color, when in point of fact before the introduction of such charcoal it was above No. 12 Dutch standard in color, and if you believe that Mr. De Ro, when he took his oath and made the entry, suppressed and concealed that fact, or did not disclose it to the custom-house officer, then that suppression and concealment, and the oath so taken by Mr. De Ro, were, in my judgment, a false appliance and practice within the meaning of the law, of which the consequence is a forfeiture of the goods contained in the invoice.

---

## Case No. 14,723.

### UNITED STATES v. CARICO.

[2 Cranch, C. C. 446.] [1]

Circuit Court, District of Columbia. April Term, 1824.

FALSE PRETENCES—BOOKS OF ACCOUNT.

It is not an indictable offence at common law, to obtain and take "by means of false and fraudulent pretences" from the compting-house of a merchant, sundry of his books of account.

This indictment charged that the defendant [James Carico], with force and arms, falsely and fraudulently, by means of false and fraudulent pretences, did obtain and take from the compting-house of one N. B. Vanzandt, two books of account of the value of five dollars, of the goods and chattels of the said N. B. V. against the peace and government of the United States. The defendant was found guilty.

Mr. Wallach, for defendant, moved in arrest of judgment, and contended that it was only a private injury, and not indictable at common law, or under any statute; and, if it were, the pretences should have been particularly set forth, and averred to be false. Rex v. Wheatly, 2 Burrows, 1125.

Mr. Swann, for the United States.

THE COURT (nem. con.) was of opinion that it was not an indictable offence, and arrested the judgment.

---

## Case No. 14,724.

### UNITED STATES v. CARLISLE.

[4 Am. Law T. Rep. (U. S. Cts.) 231.]

Circuit Court, E. D. Michigan. Nov., 1871.

CONTRACTS — CONSTRUCTION — ACCEPTANCE — INJUNCTION—PLEADING.

[1. The prosecutor of a qui tam action (as to which there had been an agreement between him and the government relative to payment, out of any judgment obtained, of the expenses of the action, including "25 per cent. of a moiety of the judgment" to an informer, and division of the balance between him and the government) wrote the postmaster general, after judgment was obtained, asking for his views and instructions as to how the 25 per cent. was to be paid,—whether it was to come out of the moiety going to the government, or from the entire amount received, the balance to be divided between the government and him according to the terms of the law. In answer the postmaster general wrote. "The 25 per cent. must first be deducted," and then, after referring to certain expenses to be deducted, said, "The remainder can then be distributed according to the terms of the law." Held, that the prosecutor's reply (taking no exception to the terms stated in the postmaster general's letter, but reciting the fact that a decree for distribution had been entered without deducting the 25 per cent., and suggesting that the clerk be authorized to pay 25 per cent. of the sum recovered and going to the government to satisfy the informer's claim, and then, after reciting that his expenses would be 16 per cent. of his moiety, stating that he proposed, when he received it, to pay into the treasury 12 per cent. of his moiety, after deducting 16 per cent. for expenses, and adding that this would be more favorable for the government than "the terms indicated by your letter") contained a recognition of "the terms indicated" as the true terms, and a proposition in lieu thereof.]

[2. The acceptance of the prosecutor's proposition by the postmaster general did not give the government a mere personal claim against the prosecutor for the 12 per cent., but vested in it an interest to that extent in his moiety of the judgment fund; so that, the decree for distribution having provided for payment to him of a moiety, without any deduction on account of the 25 per cent., he will be treated as a trustee of the fund for the government, to the extent of the 12 per cent.]

[3. The sending by the postmaster general, to the clerk of the court in which the qui tam action was pending, of a letter directing him to pay the 25 per cent. to the informer, from the moiety going to the government, "as suggested in C.'s (prosecutor's) letter," which was inclosed, was an acceptance of the prosecutor's proposition.]

[4. Where the answer to a bill for injunction admits that defendant wrote certain letters, a denial therein that the construction given thereto by complainant is correct will not entitle defendant to a denial of the injunction, the construction thereof being for the court.]

This was a bill in equity filed by complainants to recover from defendant Carlisle a portion of a certain judgment fund to which the United States set up equitable rights by virtue of certain agreements between the postmaster general and Carlisle. The facts are as follows: In November, 1868, a judgment was recovered in a qui tam action, wherein Carlisle was qui tam prosecutor against Calvin F. S. Thomas and others for frauds committed in furnishing supplies to the post office department. Indictments had also been found against the parties who committed the frauds, and the qui tam actions were subsequently brought to recover the penalties and damages under the fraud act of March 2, 1863 (12 Stat. 696). It was averred in the bill that Carlisle, who was then special agent of the treasury, agreed to reimburse the United States for all expenses incurred, advances made, and assistance rendered in the prosecution of these qui tam ac-

[1] [Reported by Hon. William Cranch, Chief Judge.]